May it please the Court, I'd like to focus on three aspects of the Intervention Inquiry. The question of whether we have a direct and immediate interest, the question of whether the United States adequately represents our interest, and the question of whether our interest may as a practical matter be impaired by ruling by the Court of Federal Claims without our presence. If the Court doesn't have questions, I'll rest on the briefs on the other issues in the Intervention Inquiry. I have a preliminary question, Counsel. What's our standard review here? Is it de novo? This Court has never reached that question. The other courts of appeals are split on the issue. The majority of courts of appeals have held that the standard of review under 24A, in other words, intervention as a right, is de novo, whereas review for permissive intervention would be discretion, abusive discretion. There is a split, though, in the circuits. In our view, de novo review is appropriate because the questions presented on this appeal are legal issues, but it shouldn't make a lot of difference. We believe that the Court of Federal Claims here misapplied the law, and that would be an abusive discretion under that standard. All the issues legal? On this, take the question of the adequacy of representation, and you're talking about perhaps whether or not on the facts of the case you've rebutted a presumption that there might be adequate representation. Is that a factual question or a legal question? Well, there's no weighing of the factual, Your Honor, there's no weighing of the facts. There is a presumption in intervention cases, it's sort of like a motion to dismiss at the complaint stage of a, pleading stage of a case, there's a presumption that the allegations that the proposed intervener have made in their papers, their intervention papers, in their intervention motion. In the Ninth Circuit cases, some of the ones you cite that deal with the question of adequacy of representation, there are factual questions presented, such as would, if you were allowed to intervene, would you present arguments different from what are going to be presented already if you're not there? Those types of considerations seem to me to be factual. They're factual. I'm just, I'm still, I'm pressing still on Judge Raina's question about which standard of review should be applied. Yeah, they're factual in the sense that there's a question about what facts have we asserted, but there's no factual finding activity by the court, the court of federal findings. There's no conflicting version of the facts, is what you're saying? Yeah, that's right, Your Honor. Could I start you out on the adequacy of the representation, because in your brief, as I understand it, you are identifying the possibility of a settlement which might impair the interests of these groups. But you don't seem to mention that the government is an inadequate representative as far as introducing witnesses and conducting a trial on the merits. Am I correct about that? No, Your Honor. We believe that there's a fundamental difference in interest that could arise at a trial in this case, not only in the settlement context. Well, how could, how? In order to make an adjudication of just compensation, the court of federal claims has to address two issues. The first is whether water released to the river for fish restoration, whether those rights belong to the Wilson plaintiffs. That's a property right, that question, right? Yes, Your Honor. So the question is, do they have a property interest in the water, for example? Yes, in a sense. And on that issue, do you diverge from the government? Aren't you aligned? No, Your Honor. If you were allowed to intervene, you would argue, I would assume, that the, with respect to the water, that Wilson has no property right in the water. Your Honor, you're correct. You would make that argument, right? Yes, we would make that argument. And would the government make the same argument? I think it is likely to, but the strength of our interest in that is different. You'd argue harder than they would. Or better? You're not arguing that the government counsel is inadequate, incompetent? Oh, absolutely not, Your Honor. But they need your assistance on the question of whether or not Wilson has a property interest in the water. I think where they primarily need our assistance is the second thing that the Court of Federal Claims would have to adjudicate. But before I turn to that, the quantity of the water that would have to be released, or that the government will release, in order to restore fish under the terms of the Settlement Agreement and the Settlement Act. What does that have to do with whether there's a property interest that we're taking? It has to do with the amount of just compensation that the government would have to pay. That's after they lose. Well, surely they're going to argue for the least amount of just compensation, right? Why would you think that they would have a different view about that than you would? Because we wouldn't necessarily argue for that. And let me explain why. The water right here, the water at issue has been used for the United States for decades for irrigation purposes. It sells that water to the front water uses. Now, can you just back up and explain, when the dam was built, the briefs make it sound as if the riverbed dried up, like no more water came over the dam. The water was diverted around the dam in irrigation channels or something like that? That's a broad brush, correct. Once the dam was built and fully in operation, virtually all of the water was diverted into two irrigation canals, which delivered water to the members of the front water uses authority, which was the third party to the settlement. That's all done pursuant to contracts? Yeah, the United States has long-term contracts with members of the front water uses authority to sell that water to them. And except for flood flows, there's really no substantial release from the dam. The United States uses a short distance of the Great River immediately below the dam as a conveyance for irrigation deliveries. But there's about 60 miles of the river that were entirely dried up, except in flood flows. So you're concerned that, as a result of these settlement negotiations, that the U.S. government may somehow agree to restrict the amount of water that's coming out? That's one possibility that we're concerned with. It's not the only possibility. But why would they do that, given the fact that they have the first settlement agreement, the one that was legislatively supported? I mean, don't they have an obligation by law to adhere to that settlement agreement? They do, but the terms of that settlement agreement are not as clear as – not sufficiently clear to make our interests aligned with the United States on what the settlement agreement means. Is that because the Secretary retained a certain amount of discretion under the agreement to determine how much water to release? That's one of the reasons. The other reason is that there's a possibility of competing and disagreeing duties on the United States. One is to release water. I don't want to take you on another track, but you use the word – there's a possibility. And then we talk in terms of the potential use of discretion by the Secretary. And it seems to me that your interests are speculative in nature. Well, not ripe, let's say. You're concerned about what may happen, of what could happen. Well, if we waited until we knew what the nature of the ruling from the Court of Federal Claims was, it would be too late for us to – What can you go to District Court in California at that time and protect your interests now that you know exactly what those interests are? Right. There's a couple of reasons. And I do want to get back to the earlier question, but there's a couple of reasons, Your Honor. The first is that in determining the amount of just compensation, the Court of Federal Claims would necessarily have to decide the issue of how much water the United States will release for fisheries purposes. It's only that water that the Wolfson plaintiffs claim a right to. That won't happen unless the government loses, right? If the government prevails, there's either no property interest in the water and no taking of the inundated land. Then there's no impact at all on the settlement whatsoever. Why do you want to intervene? Why do you want to get involved in this litigation? Let's break it up into two parts. Let's come back to the question of why, at a trial on the merits, the government isn't just as interested as you are in defeating recovery and minimizing any recovery that exists. Why is there a different interest there? I understand the settlement point. We can get to that in a moment. But let's talk about pre-settlement. What's the difference? Because Section 1004A3 of the Settlement Act prohibits the United States from acquiring water rights through eminent domain, a ruling that water belongs to the Wolfson plaintiffs will preclude the United States from releasing that water. The government doesn't want a ruling that the water belongs to them and that they have to pay just compensation. I mean, surely they are just as interested as you are in defeating the stakings claim. No? Because the Settlement Act precludes them from releasing it to the river, if they do so, it would be an exercise of eminent domain. They will not. If they do not release it to the river for fish, the property right stays in the United States. The United States was perfectly happy diverting this water for irrigation. I'm sorry. I'm not following. What is the different interest in litigating this case? I understand that you and the United States may have different interests about the settlement agreement, how to interpret it, how to enforce it. I understand that. But this is not a case about the settlement agreement. It's a case about takings. Why is their interest in litigating that issue any different from yours? It's because of the nature of the property right. There are two different elements of the property right, and it depends on how the water is used. What are the two different interests? Well, the water can either be used for irrigation, to oversimplify, the water can either be used for irrigation, in which case the Wolfson plaintiffs concede that that water right belongs to the United States, or the water can be released into the river for fisheries restoration, in which the Wolfson plaintiffs contend that the water right reverts to them. So long as the United States uses the water for irrigation, rather than releasing it into the river for fish restoration, the United States maintains its water right, it retains use of the water, and it doesn't have to pay just compensation because it hasn't taken anything. If the government prevails in this litigation, what you're saying is there's no adverse impact on your interests or anybody else's interests, because the amount of water that's supposedly being released to restore the fish and whatnot will happen, and the amount of water that's supposedly to be continued to be released for irrigation will be released, and the Wolfson's won't get any money and everything will be just fine, if the government wins. Well, it depends, probably, but it depends on the way in which the government wins. You're worried that they might win on a ground such that there's an irrigation border that would hurt your interests. Or that they're not required to release the water to the river for fisheries purposes, because the only water they're releasing for fish, they don't have to release, they could argue we don't have to release very much water for fish restoration. The settlement agreement doesn't require us to release very much. What does that have to do with the taking fish? Because the Wolfson plaintiffs claim that they own a substantial amount of the water being released for fish. If they owned all the water, then the settlement agreement was a very bad deal. Somebody should have figured out in advance that someone else owned all the water, right? Yes. So that came back. The key question here is who owns the water, because if Wolfson owns the water, the game is over for purposes of what the settlement is trying to do. So you want to make certain that the Wolfson's don't own the water. Don't own the water if it's released for fishery purposes. No one claims that they own the water if it's diverted for irrigation. And so the United States can escape liability. Claim they have prior interest in a certain number of gallons of flow from some old contract. If it's released for fisheries purposes. But their complaint does not make any allegation. It's currently being released for irrigation purposes. Except for the implementation of the settlement. Yes, for six decades it was diverted for irrigation purposes. So what's their claim here? That the water released for fishery purposes was their water and they're entitled to recover for that? Their claim is that their predecessor in interest, Miller and Lux, gave to the United States or sold to the United States only the right to divert the water for irrigation. And if the United States is not diverting it for irrigation. So they're limiting their claim to fisheries water. Yes. And I oversimplified a little bit because I think the United States can also divert it for drinking water. But if the water, they claim that their predecessor in interest did not sell to the United States the right to reuse that water for fisheries purposes. So what are you worried about? The United States might urge that this water didn't go over the dam for fishery purposes but it went for irrigation and you don't own it for that reason? Well they're claiming both a taking of water. Yes or no? I'm just trying to understand and it's not clear to me why your interests are diverging here. Are you worried that they might make that argument which you don't like? I'm worried that they'll make that argument in particular with respect to future releases, Your Honor. What do future releases have to do with it? This is a takings case. It's got to be past takings. Well their claim, if you look at the face of their complaint, alleges that the United States future releases of water. How does the Court of Claims have jurisdiction over future releases? Well that's a question we can certainly get into if we're allowed to intervene. There again, you'd be lying. You have the same interest that the government has. But their complaint speaks to future releases of no interest to the court. Do you think that? The government thinks that. But if the court were to disagree with us and resolve the merits of the Wilson plaintiff's claim, which is quite clear on this point, this is paragraph 22 of their complaint, then the United States and the applicants' interests directly diverge because the United States should minimize its liability. Can I ask a question on settlement? Is the Court of Federal Claims obligated to hold a hearing if it decides it wants to have a settlement with the parties, want to have a settlement in this case? My understanding of that, Your Honor, is that if the parties reached an out-of-court settlement agreement that did not have the Court of Federal Claims imprimatur on it, they could… Well, they're in front of them. They're in mediation now, right? So if they decide to say, okay, fine, we agree to something, they're going to drop the litigation. What I'm curious to know is whether there will be a hearing on that issue. In some legal settings, if parties want to settle, there has to be a hearing. A court has to approve the settlement. And what I'm trying to get at is whether that type of a mechanism is required in a takings case in the Court of Federal Claims. So I'm trying to figure out is whether if there's no hearing, I don't know what your role would be if you were allowed to intervene because under the law from the Supreme Court from the longest time back, you don't have any rights to vote on the settlement once you've intervened. You're just an onlooker. If there were a hearing, you'd have rights, I believe, to participate at the hearing and make known your views about the settlement.  Other than just to accept it, then I don't see you'd have any role even in the settlement side. Your Honor, this issue was not briefed. I'll give you my understanding of the answer, but if the court... But you raised the issue in your briefs about your worry about a settlement. That's true, Your Honor. Well, the answer is that if you're allowed to intervene and a party to it, the court has to consider your interest and it has to determine whether the settlement should be approved. As I understand the case, it's no? If the settlement has the court's... My understanding is if the settlement has the court's imprimatur in any way, it would have to consider the fairness of the settlement and the public interest. But if your view is, and I think it's supported by the case, is that if you intervene, you can object to the settlement and the court has to listen to you and it may rule against you. But if you're an intervener, they can't just make the case go away without your objections being heard, right? We would certainly try to have our objections heard, Your Honor. If the case was dismissed voluntarily without prejudice... No, that's correct, Your Honor, because once we're a party, it can't be dismissed voluntarily without prejudice, without the consent of all parties, so the court would have to order it and take into account... So if you have... Do you want to participate in the settlement negotiations? We'd certainly be interested in that, Your Honor. Do you have a right to do that? I think that the party... No, I think the answer is no. The answer is no. Okay. So suppose we were to say, okay, we don't see that you have any adverse interest or respect to the government in terms of pursuing litigation until it gets to settlement, but we think you should be allowed to intervene for purposes of opposing any settlement if it comes to that. Wouldn't that fully satisfy your interest? No, I don't think so, Your Honor. It would partially satisfy our interest, but we do believe that the United States has a different interest in defining what water is being released for fish than we do. We want water to be released for fish. The United States wants to minimize its liability, and water that isn't released for fish, that water rate stays in the United States, and the United States has no requirement to pay just compensation. Don't they have a contractual obligation through the settlement and the statute for certain specific releases for fish? The United States... Yeah, right. I mean, the way in which the settlement is structured, it talks about interim releases and then restoration flows. Have interim flows stopped? No, we're still in the interim. Interims are still going on? Yes. And restorations come after that? Yes. And then the fish was supposedly introduced this year? I think after... It's actually next year, I believe. So, but I mean, as I... I was having trouble understanding the distinction you were making there because it seemed to me that the contract is pretty clear about the obligation to have specific releases, and they're released with the intention of creating the flow for the fish. I would disagree with that, Your Honor, and let me explain why there are two reasons. The first is that there's an... I'm talking about the contract. Yes, I understand, Your Honor. There are parts of the releases that are subject to the Secretary's exercise of discretion, and if the United States would have to pay just compensation in order to release that water, it has an interest in not releasing the water. Our interest remains that the water be released... Why wouldn't they just pay compensation and adhere to that part of any... lost? Why wouldn't they just pay compensation and then release water under the agreement? I don't see how they conflict. For two reasons, Your Honor. The case below us is for compensation. You want to argue, or you see a threat to your interest in releases of water. There are two reasons, Your Honor. The first is there are portions of the releases of water that are discretionary with the Secretary and not absolutely required by the settlement agreement. So you think that the Secretary, instead of paying money, will decide not to release? That is one of our concerns, Your Honor. But if there's a judgment against the United States, don't they have to pay that money? Well, but the United States may attempt to reduce the judgment by saying we're not going to release that water or we haven't released that water for fisheries purposes. Why is your interest... Why is your interest in conflict when the governments are not the same, even in terms of what's happening in a settlement? In a settlement environment, the government's interest is to minimize its liability to the largest extent possible. Right? And the government has a duty to comply with the settlement agreement and the statute. It's obligated. So its interest is the same as yours in that respect. What fact can you put forward that would happen in a settlement agreement that you would want to object to? They're essentially the same problems that we have with the litigation. Although the United States may have some more flexibility in a settlement agreement. I thought you were saying they were different because in the settlement, the United States, in order to reduce its monetary liability, might agree to reduce the water flow in the future. And I think it could effectively get at the same thing if this case goes to trial and experts come in to describe how much water has to be released in the future to restore the fish, that they would put on experts or evidence that suggests that less water needs to be released to meet the standards of the settlement agreement than we would put on. Would that put them in breach of the settlement agreement and the statute? Well, not necessarily. Yeah, for example, they say, well, we don't want to have to pay you all this money, so we're just going to crank way back. We're not going to release any more water. That may make the hypothetical like that. That might, Your Honor. But the point is that the settlement agreement is not as simple as saying, in year five, the United States will release 400 units of water. It is not that simple. Well, the key problem, as I understand what you're saying, is that the settlement agreement says the United States can't take water by eminent domain. And that would be the result of a judgment of the Court of Federal Claims that there's takings liability here. And therefore, the United States would, under the settlement agreement, not have to release water that would result in eminent domain liability. Correct? Thank you, Your Honor. Yes, correct. That is the second part of our argument. Isn't that an eventuality? Why is that a direct and immediate interest in what's a litigation? It's a direct and immediate interest because it's the consequence of the operation of Section 1004A3 of the Settlement Act. There's no reason to believe that the United States would. But if that was to happen, couldn't you go to district court and say the government's violating the statute? Well, no. I think, no, Your Honor. I think that would be very difficult for us to do for two reasons. But the principal reason is that Section 1004A3 of the Settlement Act prohibits the United States, as a matter of federal law, prohibits the United States from acquiring water for fisheries purposes through an exercise of eminent domain. So the United States would say, the settlement agreement says we have to comply with federal law. The Settlement Act prohibits us from acquiring this water through eminent domain. If we release it for fisheries purposes, under the judgment of the court of federal claims, it's been acquired through eminent domain. So we can't do that. So we can't release this water to meet the applicant and intervention's interest in restoration of the fish. We're barred by federal law from doing that. That's our principal concern. I think we're sort of running out of time. I'm sorry.  Thank you. We'll give you three minutes for rebuttal. Thank you, Your Honor. Thank you. May it please the court, Roger Marzullo representing the Wilsons. I think the court has hit on the key issue here, and that is the limited nature of a just compensation case brought under the Tucker Act in the court of federal claims. Rule 24A requires that the court focus on the interests asserted by the proposed intervener. You're not trying to litigate future water action, right? Absolutely not. Not only that, Your Honor. We're not trying to quantify the Wilsons' rights, water rights or land rights. I think the rule, in fact, as given by this court, is that what the Wilsons must prove is that they owned the property right which the government has taken. Those are the two elements of a taking case. So that not only is it the case, as the court has pointed out, that if the United States prevails, there is no impact on the interests of these proposed interveners. But if the government wins, who owns the water rights they're concerned about? The United States. And that's because, let's turn to the settlement issue because I'm having a hard time seeing why pre-settlement there's any divergence of interest or a lack of adequate representation. They're saying in the course of a settlement, the United States might say, OK, well, we won't release any more water in the future and we'll pay you a minimal sum for the past quarter that's been released. And they say, well, that's a terrible settlement that is inconsistent with the purpose of our settlement agreement with the government. We want to be heard about that. Why don't they, at that point, have an interest in being heard to oppose the settlement? Well, I suppose I have two things to say about that, Your Honor. The first is that because the Tucker Act grants jurisdiction only to enter judgments for money damages, the Court of Federal Claims would not have jurisdiction to enter a consent decree. Well, it wouldn't be a consent decree. It would just be a private settlement. And they would say, under Rule 41, we're going to dismiss this. We're not asking for a court order. And your opponents here are saying, even a private settlement agreement like that that's not embodied in the court order may adversely affect our interests because it will bind the United States not to release future water. That's not what we want. We want the water to continue to be released. And there, Your Honor, there is no court proceeding for them to be involved in. Obviously, a private agreement can be entered into with or without a lawsuit by any party. For all we know, the government may be meeting with other landowners. And by the way, many of them are not. If they're a settlement, if they're an intervener, if they're a party, they have a right to object to the settlement. You can't just dismiss under Rule 41 without their consent. There has to be a hearing before the court at which they could make known their objections, right? Well, a hearing on the dismissal. I'm not sure that the terms of the settlement. In fact, Your Honor, sometimes settlements are entered into that are confidential and don't even declare the terms. But in any event, if there were a private settlement between the parties, that would never come before the court. There would be. Well, if they were an intervener and objected to it, it would have to come before the court, because you only are entitled to dismiss under Rule 41 if all the parties agree. Well, but the objection, Your Honor, would not be vis-a-vis the settlement. The objection would have to be, you can't dismiss the case because we're entitled to have it tried or something like that. Why couldn't the objection be, we think the settlement's going to interfere with our interests under our settlement agreement with the government? And therefore, you shouldn't enter into the settlement agreement. You should force the government to litigate or something. I don't know. Well, wouldn't there be a concern? I mean, that sounds as if the main worry of this putative settlement agreement is that it would put the government in gross breach of its obligations under the settlement agreement. Well, of course. I mean, it says I'm not going to release any more water. Wouldn't the interveners be able to go back to the district court in California and say, hey, the government is proposing to enter into or is settling a case in breach of its obligations under our deal? Of course, Your Honor. I mean, there is absolutely no ground for suspecting that the United States would be so foolish as to enter into what? A private agreement that's not court-enforceable in any event that is in violation not only of the settlement, but more importantly, of a statute passed by Congress. We're talking about it. But what they frame the settlement as, we agree that this is a taking. We'll compensate you in a small amount for the past taking. We won't do any more of this because it would be a taking. And then they say, well, under the settlement agreement, this isn't, you know, we don't have to release water if it would result in a taking. And here is an agreement that says it would be a taking if we released the water. So there would be an inconsistency between the two. Love it, Your Honor. How would I enforce that agreement? I can't go to the Court of Federal Claims. They don't have jurisdiction. It would be a private contract that violates the statute. Well, then why would it violate the statute? Well, because the statute requires certain releases to accomplish certain requirements. Out of their takings, right? Oh, no, absolutely. Let's be clear about what counsel was talking about. The provision in question, section 1004 of the Settlement Act, says the United States shall acquire water rights as needed for this settlement, but may not use the power of eminent domain to do so. It's a voluntary acquisition. It contemplates the United States purchasing water rights to accomplish the terms of the settlement. That's all. If the government were to settle the case, they wouldn't necessarily concede that there had been a taking. Well, of course not. I mean, they don't need to. Of course not. And the only payment, or the only judicially enforceable part of such an agreement would be a payment. That's the limited nature of what goes on in the Court of Federal Claims. Can I come back to what I understand the rights of the intervener would be if they were allowed to intervene? As I understand it under Zipes and local number 33 Supreme Court cases, the party who intervenes has a right, has an opportunity to present evidence and have its objections heard at hearings on whether to approve the consent decree, but does not have the power to block the decree by withholding its consent. Yes. If that's the parameter, then if the intervener show up at the hearing and say, well, we don't like this settlement because it is adverse to our interest because the government is not going to release water under their obligations, wouldn't the Court of Federal Claims say, well, that's none of my business? Precisely, Your Honor, it would not be within the jurisdiction of the Court of Federal Claims to enter that consent decree. That would have to be a, there could be such a private agreement with or without litigation if it's a private agreement, of course. So the remedy, I should think, would be not only either going back to the Eastern District of California to enforce rights under the settlement agreement and or the statute that implemented that agreement, but also an Administrative Procedure Act claim saying that this final determination of the Secretary of Interior was arbitrary, capricious, and contrary to law. All of those remedies exist, and all of this, I must add, is purely speculative. Yeah, but that happens in a lot of these intervention cases that there, in theory, there's another remedy, but they're allowed to intervene because it's a practical matter. The practical matter, as opposed to a strict legal matter, the result may impair their ability to enforce their rights. And it seems to me that they've got a point, that it's possible that as a practical matter there are some varieties of settlement agreements that might impair their interests. A consent decree, yes, Your Honor, but I underscore that because of the limited jurisdiction of this particular court, the only consent decree that it can enter is the United States shall pay X dollars and the case shall be dismissed. It's the only kind of consent decree we can have in this case, and that does not affect their interests. I'd like to make a point about interests, by the way. There are two different plaintiffs here. Let us keep in mind one of those plaintiffs is the trade association of the people who fish for salmon. And this court, of course, in cases like American Maritime, has held that commercial interests like that, or Rosebud, that commercial interests like that are not sufficient to allow intervention. The other... But they were a party to the settlement agreement, right? Pardon? Both of these parties here were parties to the settlement agreement. Were there parties to a settlement agreement in a district court somewhere? It's not just a competitive interest that they're asserting. They're asserting an interest as signatories to the earlier settlement agreement. That's different from Rosebud and those other cases. Well, Congress has now passed a statute implementing that settlement agreement. In fact, as I read the proposed intervener's brief, the settlement agreement has, in effect, been superseded by the statute. And I don't think that a party has... superseded entirely. Well... Certain provisions of the settlement agreement are now embraced in a statute as well as being embraced in the settlement agreement. Yes. I stand corrected on that point. I agree with that, Your Honor. But my point is that the interests... Well, the interests as I understood them of the PCFFA are to enforce whatever rights it has under the settlement agreement, under the statute. But those rights are enforceable in a district court. They are not and cannot be affected by a Tucker Act taking case where the only issue... Recall the issue in a taking case. The claim is that the property right has been acquired by the United States and we haven't been paid for it. It's a claim for money due. That is the subject matter of the litigation. And that is subject matter in which neither of these interveners has an interest. Come back to the presiding judge's question and concern. And I share in a way the concern which is the worry from the intervener's point of view that the settlement agreement will be such that the flows, whether they're interim flows or restoration flows, as it would be for the purpose of regenerating the fish, will be shut off. And so if indeed they have an interest in wanting to enforce the settlement agreement, so what is the role of the court of federal claims in looking at a settlement agreement which one party wants to, in fact, enjoin the government from violating the settlement agreement? The settlement agreement you're talking about... If it's a real interest to say, you know, somebody's going to settle a case and they're going to settle a case in such a way that the government's going to violate its obligations under the settlement agreement, it's going to turn the crank off and just not let any water come down for the fish. Right. And they have a live interest in wanting to make certain that the settlement agreement in California is fulfilled. And this is the kind of agreement between my client and the United States that exists independently of the litigation. It's something they could sit down and work out between themselves with or without a lawsuit because the court of federal claims has no role in determining how much water is getting released. It can only determine how much Wolfson gets paid. So what they're saying is they want to be in on every conversation the secretary has with every landowner to make sure the secretary is not undermining their settlement agreement. Then that's a pretty broad... They probably need a broader injunction from the court that basically says the secretary can't talk to anybody... Can the court of federal claims approve a settlement amongst the two parties right now that includes both compensation and some sort of agreement as to the amount of water to be released and then have that settlement agreement approved by the court of claims? I don't... Well, when you say approved, Your Honor, to make it a court order, to make it a consent decree, agreement between the parties, then approved by the court. The latter part of that agreement would be unenforceable. It would be beyond the jurisdiction of the court of federal claims to enter. Yeah, but what you're assuming is that a private agreement couldn't impair their interest, that only a court order could impair their interest. I'm not sure that the cases support that notion. Right. And I guess what I'm saying, Your Honor, is the... We could dismiss this lawsuit today and we still have the right to talk to the secretary of interior about what they're doing. And if... And I will say this is highly, highly speculative, but if the secretary were foolish enough to enter into an agreement that violated the statute, it would be an unenforceable contract, contrary to statute. It would put him on the receiving end of all kinds of litigation from these proposed interveners, and it would never be implemented. But isn't the problem that the settlement agreement gives the secretary discretion? And it seems to me that that's one of the key issues here, that one way or the other, the secretary is left with a lot of leeway to determine how much water release and when. Now, if that's... And I understand there is some discretion. If that is the concern, then I would have to pose the question, by what authority do these parties, the fishermen and the environmental group, control the secretary's discretion? That is, their rights have to end at the point of the mandatory provisions in their settlement and in the statute. Yeah, but what they would argue is that under the settlement agreement, we bargain for an exercise of good faith discretion unimpaired by other agreements with other people, and by entering into this agreement, you're taking away discretion that the secretary would otherwise have, so your agreement is impairing our interest in that respect. Well, I would say... I mean, we have gone so far afield on speculation, Your Honor, as to what could be in a private agreement that the Court of Federal Claims has no jurisdiction over anyway, that at the point that such an agreement were hypothetically to be entered into, which I don't anticipate it will, wouldn't that be the time then that these parties could say, I now have an interest, as opposed to saying, I want to intervene because I'm concerned that the secretary will unlawfully limit his discretion and will enter into an agreement that the Court of Federal Claims doesn't have any jurisdiction over anyway. Well, that's a good point, and there are cases, I think particularly out of the Seventh Circuit, which have suggested, well, intervention isn't an all-or-nothing thing. We could allow intervention for a limited purpose, for example, in this case, to object to a settlement agreement that isn't the type that they are hypothesizing. Exactly. I think... Well, that's true, but what we're talking about here is still the adequacy of representation. Absolutely. I think we're still under that umbrella, and we've perhaps decided that for purposes of litigating on the merits in the trial, the interest is adequately protected, but there might be a risk in the settlement. If this hypothetical risk in a settlement of an adversity of interest is such, then the exception would swallow the rules. I would think there would not be possibly a case in which there was not inadequate representation where there was a chance of settlement. There's a chance of settlement in every lawsuit, right? So if I were to decide that the possible divergence of interest in a settlement is sufficient to satisfy adequacy of representation, it would mean that that element of the requirement for intervention is a nullity, wouldn't it? Absolutely, Your Honor. And in fact, I think we could go so far as to say that the settlement we're talking about here is probably one by which the United States, in effect, acquires water rights, and the other right, remember, is a flow adjustment for the land, that that's actually something that the United States is encouraged to do by the statute itself. Congress has said, if you need more water rights, go out and purchase them. Wouldn't this be a perfect opportunity if they need additional water rights to go ahead and purchase them? What about an approach which would say, okay, they can intervene now, but if there is, at some future time, a settlement between your client and the government, they will be advised of the terms of that settlement and be given an opportunity to seek to intervene and oppose the settlement at that point. What would be wrong with that? I suppose the only thing wrong with it is that it's not authorized by Rule 24A. That is, that it is the burden of the proposed intervener to say, to show that its interests will be directly affected. What we've done now is to say, hypothetically, what if there's a settlement? What if the settlement contains... But they're not being allowed to intervene now. They would only be allowed to intervene in the future if, in fact, there is a settlement and if, in fact, they can demonstrate that it would impair their interests. May I propose an amendment, Your Honor, that they would be allowed to move to intervene at that point? How about that? Is that a big problem? Allowing them to move to intervene at that point? No, I have no problem at all. Well, but how do they... I mean, what we're cobbling together, a homemade remedy here, is for some future event. At the present time, the parties have no obligation to notify the would-be interveners of what's going on in the mediation, correct? That is correct, Your Honor. And so there's no... This court would have to say, well, at such a time as the parties are ready to settle in front of the mediator, the law requires them to notify anyone who might want to intervene. You know, there may be more people by then who have notified the world of the terms of the settlement, which otherwise were going to be kept private, no doubt. And then anyone who wants to come forward and try to show that they have an interest in the settlement could come in. But wouldn't that violate the requirement that's been pretty much shaped by all these circuits, and that's clear under Rule 24a.2, that the interest of the applicant, it has to be direct and immediate. Exactly. And any hobbling together of some sort of an agreement that you can do this in the future, wouldn't that violate that requirement? Absolutely. And that's why my suggestion is that a motion addressed to the Chief Judge, Chief Judge Hewitt, in this case, at the appropriate time, whenever that may be, would be the way to address any concerns about settlement. I would not anticipate this court making a ruling now because I think there is no showing of any direct impact on the interests of these parties. There is only sheer speculation that there may be such an agreement, and that they may have some objection to it. Am I correct that the government wouldn't enter into a confidential settlement agreement in these circumstances? Is that a fair assumption? Well, normally they're not confidential, Your Honor. I can't think of one that we've entered into in the takings arena that has been confidential. I think the terms are generally known. Is there a possibility of a private remedy here? I mean, I don't know whether your client is willing to undertake, obligate itself to notify these would-be interveners at the time that if you were going to have a settlement, and to give them an opportunity to be aware of the terms of that settlement so that they could then appeal, if they wish to the court of federal claims, to seek to intervene at that point in time to make their views known. I mean, I'm feeling myself a little uneasy in having the court impose that remedy. But a solution to this problem, if it weren't objectionable to your client, would be simply to allow the would-be interveners to have some sense of what's happening if the case is going to go down by way of settlement. Right. I am reluctant, Your Honor, I just don't have the authorization today to commit to that point. I will say, however, that the court may notice that there's a party missing here. The United States has not opposed the intervention. And although both we and the United States are bound by a confidentiality agreement, I think there has been communication between the United States and the interveners. I think we can be pretty confident the United States is going to let these folks know. And certainly, if there were any provision that governed the Secretary's discretion, that's not going to be confidential. If the government enters into a contract, which is almost, which is inconceivable to me. Wouldn't a contract that the government enters into that's contrary to the plain reading of a statute, wouldn't that be an ultra-virus undertaking? It would either be ultra-virus. It would be unenforceable as a contract contrary to law. And it would probably be a violation of the Administrative Procedure Act, notice and hearing provisions. In short, there are all kinds of reasons why that kind of agreement, Your Honor, is just not going to emerge from these discussions. It, you know, I suppose it can only if we think that people have sort of gone a little crazy. So if the government wins, then they own the water rights. They can do as they want, and we can assume that they'll satisfy the settlement agreement. If they lose, then they have to compensate and pay money. Correct, and they own the water rights. But is there anything in the complaint, and they own the water rights, but is there anything in the complaint that governs release of water in the event that the government loses? No, Your Honor. Absolutely nothing in the complaint that would be beyond the jurisdiction of the Court of Federal Claims. That would be an adjunctive or declaratory claim and be kicked out like that. Okay, thank you, Mr. Matillo. Thank you, Your Honor. Mr. Wall, you have three minutes here. Yes, quickly, Your Honor. Are you confident that if they reach a settlement that you'll be informed about it before the case is dismissed? Absolutely not. We've tried to find out what's going on with the settlement discussion, but I haven't told you nothing. That's a little different. They don't want to tell you about the settlement discussion. But if there's a signed settlement agreement, it would not be confidential, would it? I don't know the United States' position on that, and Wilson's counsel has not committed to that, Your Honor. Right now there's a confidentiality agreement. We don't know what would happen. Could the entry into a confidential agreement not make it public if that agreement is contrary to the provisions of a settlement agreement? I think we would ultimately be able to get a copy of that. Whether we could do it in time to object before the Court of Federal Claims is another question. Let me address a few things very quickly. Your right is limited to one of being able to object, not the one to be able to stop it. You have no vote on a settlement, correct? No vote, Your Honor. We don't have a veto. Yes, we don't have a veto. Counsel said that the standard is whether our interests will be directly affected. That's incorrect. The rule language is whether our interests or ability to protect our interests may, as a practical matter, be impaired or imputed. It's not whether our interests will be directly affected. The Court stated our concern as a concern that the water would be shut off. We're actually quite concerned that the water flows may be reduced. There's evidence in the record that any reduction in flows would have an adverse impact on fish restoration. A question came up about purchasing water. The contract itself contemplates reducing flows to avoid adverse impact on the land, right? At least with the interim flows? It does anticipate that, Your Honor. So the deal that you agreed to says that the Secretary is supposed to turn the valve back on the flows if he determines that the flows are having an adverse effect downstream on the land. We'd certainly, yes, Your Honor. Even if there was a taking-holding that they'd released water that had gone on his land and harmed his land, the Secretary should have turned the valve back. That is precisely our concern. We would like to be involved in the question of whether there has been an adverse seepage impact or whether fishery flows have to be released in the quantities we want under the settlement agreement. When does your interest accrue? Does it accrue during settlement negotiations or does it accrue when the Secretary actually turns the valve and cuts the flow? I mean, you would know that, right? You would know. I take it you're monitoring water releases or your organization is. Yes, Your Honor, we are. So wouldn't you know when the Secretary has cut the faucet and there's no more releases? You would know about that. Wouldn't that be when your interests accrue? No, Your Honor. I think our interests accrue at the time in which our inability to participate in the case may, as a practical matter, impede our ability to protect those interests. Okay, and I agree with you about may, but it seems to me that the case law doesn't make that unbridled. I mean, may doesn't necessarily mean a possibility or a mere possibility. To what extent are we required to consider whether something may happen in terms of probabilities or a reasonableness test, let's say? Is it reasonable to assume? Your Honor, this Court hasn't yet addressed that question, but the closest examples from the sister circuits are the quiet title actions in the San Juan County case in the Tenth Circuit and the Carpenter case in the Ninth Circuit. In both of those cases, the environmental groups that wanted to intervene were concerned that the results of the quiet title action could impair their recreational interests in the land at issue in the future, and both courts said that that was a direct and immediate interest and that their interest may, as a practical matter, be impaired for purposes of interventions. Those are the closest cases, although this Court hasn't yet considered it. There was, at one point, a standard in the 1933 version of the rule that said that we could only intervene if we would be bound by the results. That standard was amended in 1966 to introduce the may impair standard. Your Honor, I think I may be out of time. Can I make one last point? Go ahead. OK. How much water is paid, which counsel conceded was at issue in front of the Court of Federal Claims, depends how much water is released for fish. That is an issue on which our interests and the United States' interests diverge. In paragraph 22 of the complaint, the Wilson plaintiffs specifically say that the United States' future releases of water constitute a taking, and then they seek compensation for that. And that's what their complaint says. We have to assume that they meant it. Their complaint also refers to restoration flows, which are future flows, because they haven't even yet begun. We believe that they're going to attempt to get an adjudication of how much water the United States is required to release in the future. That's an interest in which the applicants have a direct interest, and their interest is not the same as the United States. Those flows would not happen in the future if we had not sued. Where do we find that reference to the complaint? If we look at appendix page A33, paragraph 22 of the complaint. Yeah, but where is the request for relief as to the future releases? And, Your Honor, also, well, the request for release is a request for damages for the taking, and the request for relief for damages is in the prayer for relief at appendix page A43. It refers to the taking, and the complaint defines the taking to include future activities by the United States. In that one paragraph 22? Paragraph 22, and also in paragraph 18, which is appendix page A31, it says, it refers to the restoration flows, which are not the interim flows, but they're flows that have not yet begun. OK, thank you, Mr. Rowell. Thank you, Your Honor. Thank you, both counsels, in case you submitted. All rise. The army court is adjourned until tomorrow morning at 10 AM. Thank you.